IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>FREDDIE JOSEPH MITCHELL,<br><br>        Defendant. | DOCKET NO. 5:19 CR 55 |

**UNOPPOSED MOTION TO CONTINUE SENTENCING HEARING**

Freddie Mitchell, by and through his counsel of record, Assistant Federal Defender Peter Adolf, respectfully requests that this Court continue the sentencing hearing presently scheduled for April 30, 2020 at 1:45 PM at the Charlotte courthouse. As grounds therefore, it is averred:

*COVID-19: Facts*

1. A pneumonia of unknown cause, later to be determined to be a novel coronavirus named COVID-19, was detected in Wuhan, China in December of last year.[1] It is a respiratory illness that can spread from person-to-person, for which there is no vaccine or specific treatment, and severe complications include pneumonia in both lungs, multi-organ failure, and death.[2] Last month the World Health Organization classified COVID-19 as

---

[1] World Health Organization, *Rolling Updates on Coronavirus Disease (COVID-19)* (updated Apr. 23, 2020) (available at https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen).
[2] Centers for Disease Control, *Coronavirus disease 2019 (COVID-19) and you* (Apr. 15, 2020) (available at https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf).

a pandemic.[3] As of this filing the United States has nearly 900,000 cases of the disease.[4] It has prompted the President of the United States to declare a state of emergency, as well as all 50 states, including North Carolina.[5] 43 states, including North Carolina, have closed all schools for the rest of the school year, along with the District of Columbia, Puerto Rico, the U.S. Virgin Islands, and the U.S. territories of the Pacific.[6]

2. In the words of Dr. Anthony Fauci, the nation's top infectious diseases expert and Director of the National Institute of Allergy and Infectious Diseases, COVID-19 "is a virus that transmits readily. It's a virus that has a high degree of morbidity and mortality" and "what we should be doing is absolutely making it much, much different, not business as usual."[7]

3. The virus is growing at an alarmingly exponential rate. On March 10, 2020, there were 1,039 cases in the United States.[8] As noted above, that number is now nearly 900,000 and the death toll in the United States is now at least 50,000 people.[9]

---

[3] *Id.*
[4] Lauren Gardner, Mapping 2019-nCoV (Johns Hopkins Whiting School of Engineering 2020) (last accessed Apr. 24, 2020) (available at https://systems.jhu.edu/research/public-health/ncov/; https://gisanddata.maps.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6); National Governors' Association, Coronavirus: What You Need to Know (available at https://www.nga.org/coronavirus/#states) (last accessed March 23, 2020).
[5] National Governors' Association, *Coronavirus: What You Need to Know* (available at https://www.nga.org/coronavirus/#states) (last accessed March 23, 2020).
[6] Nicole Chavez & Artemis Moshtaghian, "43 states have ordered or recommended that schools don't reopen this academic year," *CNN.com* (updated Apr. 24, 2020) (available at https://www.cnn.com/2020/04/18/us/schools-closed-coronavirus/index.html)
[7] ABC News, *'This Week' Transcript 3-15-20: Dr. Anthony Fauci, Secretary Steven Mnuchin* (Mar. 15, 2020) (available at https://abcnews.go.com/Politics/week-transcript-15-20-dr-anthony-fauci-secretary/story?id=69603230).
[8] William Feuer, *US Coronavirus cases surpass 10,000, doubling in two days*, CNBC (Mar. 19, 2020) (available at https://www.cnbc.com/2020/03/19/us-coronavirus-cases-surpass-10000-doubling-in-two-days.html).
[9] Sergio Hernandez, Sean O'Key, Amanda Watts, Byron Manley, & Henrik Pettersson,, "Tracking Covid-19 cases in the US," *CNN Health* (updated Apr. 24, 2020) (available at https://www.cnn.com/2020/03/03/health/us-coronavirus-cases-state-by-state/index.html).

4. The spread is difficult to stop absent extreme limitations on human-to-human interaction. This is because people who never develop any symptoms of the disease can infect others[10] and even if symptoms manifest, they can be difficult to distinguish from innocuous conditions like allergies.[11] And the virus when deposited on commonplace surfaces may potentially infect those who come into contact with that surface up to three days later.[12]

5. Part of the novel virus' lethality stems from its rapid spread. Symptoms do not manifest for 2-14 days after exposure.[13] Symptoms often begin in a mild form, and a carrier of the coronavirus is contagious even before symptoms appear.[14]

6. Worse, the World Health Organization is now reporting that there is no evidence that past infection confers immunity, and that people who recover from the disease may therefore be vulnerable to a second infection.[15]

---

[10] U.S. House of Representative: Committee on Homeland Security, Testimony of Dr. Tom Inglesby, Director, Center for Health Security at Johns Hopkins Bloomberg School of Public Health (Mar. 4, 2020) (available at http://www.centerforhealthsecurity.org/our-work/testimony-briefings/pdfs/2020-03-04-HomelandSecurityCommittee.pdf).

[11] Annie Schroeder, "UVA doctor weighs in on differences between coronavirus, flu, and allergies" (Mar. 17, 2020) NBC29 (available at https://www.nbc29.com/2020/03/17/uva-weighs-differences-between-coronavirus-flu-allergies/).

[12] *See* National Institute of Allergy and Infectious Diseases, *New Coronavirus Stable for Hours on Surfaces* (Mar. 17, 2020) (reporting study's findings on how long virus remains traceable/stable on various surfaces) (available at https://www.niaid.nih.gov/news-events/new-coronavirus-stable-hours-surfaces).

[13] Centers for Disease Control and Prevention, "Coronavirus Disease 2019 (COVID-19): Symptoms" (retrieved on March 17, 2020 at https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fabout%2Fsymptoms.html).

[14] Tina Hesman Saey, "Coronavirus Is Most Contagious Before And During The First Week Of Symptoms," Science News (Mar. 13, 2020) (retrieved on March 17, 2020 at https://www.sciencenews.org/article/coronavirus-most-contagious-before-during-first-week-symptoms).

[15] "'No Evidence' That Recovered COVID-19 Patients Cannot Be Reinfected," *Reuters* (Apr. 25, 2020) (available at https://www.nytimes.com/reuters/2020/04/25/world/americas/25reuters-health-coronavirus-who.html).

### *Government and court action to prevent spread*

7. Each and every U.S. state and territory has declared a state of emergency and natural disaster, activated the National Guard, and closed all schools,[16] with 49 of the 56 states and territories already closing schools for the remainder of the school year.[17] 45 of the states and territories have issued mandatory, universal stay-at-home orders, while the rest have issued such orders for certain persons, limited sizes of public gatherings, and/or issued the same as "guidance."[18]

8. Courts, like the Executive Branch, have been acting swiftly to assist this country in its public health crisis. The Supreme Court has closed its courthouse and either postponed oral arguments or scheduled them to be conducted telephonically.[19] The United States Court of Appeals for the Fourth Circuit closed its courthouse to the public last month and cancelled and/or postponed its scheduled oral arguments for the March and April argument sessions.[20] The North Carolina Supreme Court closed the state courts and announced the automatic continuance of all non-emergency cases.[21]

---

[16] National Governors Association, "Coronavirus State Actions Chart" (Apr. 24, 2020) (available at https://www.nga.org/wp-content/uploads/2020/04/CoronavirusStateActionsChart_24April2020.pdf).
[17] Nicole Chavez & Artemis Moshtaghian, "43 states have ordered or recommended that schools don't reopen this academic year," *CNN.com* (updated Apr. 24, 2020) (available at https://www.cnn.com/2020/04/18/us/schools-closed-coronavirus/index.html)
[18] National Governors Association, "Coronavirus State Actions Chart" (Apr. 24, 2020) (available at https://www.nga.org/wp-content/uploads/2020/04/CoronavirusStateActionsChart_24April2020.pdf).
[19] Supreme Court of the United States, Office of the Clerk, Guidance Concerning Clerk's Office Operations (Apr. 17, 2020) (available at https://www.supremecourt.gov/announcements/COVID-19_Guidance_April_17.pdf).
[20] U.S. Court of Appeals for the Fourth Circuit, "Public Advisory Regarding Operating Procedures in Response to COVID-19" (Mar. 17, 2020) (retrieved on March 17, 2020 at http://www.ca4.uscourts.gov/docs/pdfs/publicadvisorycovidoperatingprocedures.pdf?sfvrsn=4)
[21] North Carolina Judicial Branch, "Chief Justice Beasley Announces Judicial Branch Response to COVID-19 (Coronavirus)" (Mar. 13, 2020) (retrieved on March 17, 2020 at https://www.nccourts.gov/news/tag/press-release/chief-justice-beasley-announces-judicial-branch-response-to-covid-19-coronavirus).

9. Every federal district adjoining the Western District of North Carolina issued orders last month continuing all trials and, *inter alia,* continuing and limiting other court proceedings. Specifically:

10. The Middle District of North Carolina has continued all criminal cases until at least May 4, 2020, and will apparently continue any sentencing or supervised release proceedings until at least that date; "exceptional cases that may be considered for exemption from a continuance include those where a defendant may be considered to have served or over-served sentence."[22]

11. The Western District of Virginia has cancelled all in-person proceedings through at least June 10, 2020.[23]

12. The Eastern District of Tennessee is conducting all proceedings remotely, including sentencing hearings that "cannot be further delayed without serious harm to the interests of justice,"[24] and has explicitly barred the public from entering courtrooms.[25]

13. The Northern District of Georgia is conducting all proceedings remotely, including sentencing hearings that "cannot be further delayed without serious harm to the interests of justice."[26]

---

[22] Standing Order 13 at 3 (M.D.N.C Mar. 30, 2020) (available at https://www.ncmd.uscourts.gov/sites/ncmd/files/Amd_SO13_COVID-19.pdf).
[23] In The Matter Of: Court Operations Under The Exigent Circumstances Created By Covid-19, Second Amended Standing Order 2020-5 (W.D. Va. Apr. 16, 2020) (available at http://www.vawd.uscourts.gov/media/31965437/ courtoperationscovid19-amended-2.pdf).
[24] In Re: Authorization for Video and Audio Teleconferencing During COVID-19 Pandemic Pursuant to the CARES Act, SO-20-08 at 2 (E.D. Tenn. Mar. 30, 2020) (available at https://www.tned.uscourts.gov/sites/tned/files/SO-20-08.pdf).
[25] In Re: Courtroom Access During COVID-19 Pandemic, SO-20-10 (E.D. Tenn. Apr. 15, 2020) (available at https://www.tned.uscourts.gov/sites/tned/files/SO-20-10.pdf).
[26] In Re: Emergency Authorization Of Video Teleconferencing And Telephone Conferencing In Criminal Proceedings Due To The COVID-19 Pandemic, General Order 20-04 at 3 (N.D. Ga. Mar. 30, 2020) (available at http://www.gand.uscourts.gov/sites/default/files/NDGA_GenOrder20-04.pdf).

14. The District of South Carolina has continued all criminal proceedings until June 5, 2020, and is conducting in-person hearings only when required by statute or constitutional rule where the defendant does not consent to appearance by video or telephone.[27]

15. Elsewhere within the Fourth Circuit, the Eastern District of Virginia has suspended all "non-critical and non-emergency *in person proceedings"* through June 10, 2020;[28] the District of Maryland has postponed all criminal proceedings through June 5, 2020;[29] and the Southern District of West Virginia has postponed or cancelled all in-person proceedings through May 31, 2020 and closed the courthouses to the public.[30] The Northern District of West Virginia, in authorizing the use of video and teleconferencing, has declared that sentencing hearings "cannot be conducted in person without seriously jeopardizing public health and safety."[31] And while the Eastern District of North Carolina has not automatically continued all criminal matters, for any hearings which an individual

---

[27] In Re: Court Operations In Response to COVID-19, Amended Standing Order 3:20 MC 139 at 1 (D.S.C. Apr. 14, 2020) (available at
https://www.scd.uscourts.gov/StandingOrders/Amended%20Order%20Regarding%20Court%20 Operations%20in%20Response%20to%20COVID-19/Amended_Standing_Order_In_Re_Court_Operations_in_ Response_to_COVID-19.pdf).
[28] In re: Court Operations Under The Exigent Circumstances Created By The Outbreak Of Coronavirus Disease 2019 (Covid-19): Updates To The Modifications Of Court Operations And Extension Of The Postponement Of In-Person Proceedings, 2:20 MC 7 at 4 (E.D. Va. Apr. 10, 2020) (emphasis in original) (available at http://www.vaed. uscourts.gov/notices/Gen%20Order%202020-
12%20Court%20Operations%20Updated%20Notices.pdf).
[29] In Re: Court Operations Under The Exigent Circumstances Created By Covid-19, Misc. No. 00-308, Standing Order 2020-07 at 2 (D. Md. Apr. 10, 2020) (available at
https://www.mdd.uscourts.gov/sites/mdd/files/2020-07.pdf).
[30] In Re: Court Operations In Light Of The Exigent Circumstances Presented By The Covid-19 Pandemic, 2:20 MC 52, General Order No. 5 at 2-3 (S.D.W.Va. Apr. 14, 2020) (available at https://www.wvsd.uscourts.gov/ pdfs/generalorders/covid19/General-Order-5.pdf).
[31] In Re: Criminal Case Operations Due To Covid-19 Response, 3:20 MC 28, doc. no. 1 at 2 (N.D.W.Va. Mar. 30, 2020).

judge decides to hold, "[t]he parties are encouraged to seek to participate in hearings and proceedings by telephone or video as appropriate."[32]

16. Within the Charlotte Division, Judge Conrad has told the Charlotte Observer that he has granted every request for a delay in a case due to health concerns.[33] He has indeed granted all COVID-19-related sentencing continuance motions filed by the office of the undersigned, and the undersigned is unaware of Judge Conrad denying any such motions. The undersigned is similarly unaware of either Judge Cogburn or Chief Judge Whitney denying any such continuance motions.

17. Across the country, 34 states, the District of Columbia, Puerto Rico, Guam, the U.S. Virgin Islands, and the Northern Mariana Islands have suspended in-person courtroom proceedings by statewide/district-wide order, with the remaining states leaving the decisions up to local courts.[34]

18. In short, this Court stands alone among the judges of the Charlotte Division, the state and federal courts of North Carolina, the adjacent federal district courts, and the district courts of the Fourth Circuit in holding non-emergency sentencing hearings despite requests to continue the hearings, much less insisting that such hearings be held in person, and stands with a tiny minority of the thousands of judges throughout the United States in so doing.

---

[32] In Re: Court Operations Under The Exigent Circumstances Created By The Covid-19 Pandemic, 20-SO-5, Standing Order at 3 (E.D.N.C. Mar. 18, 2020) (available at http://www.nced.uscourts.gov/data/StandingOrders/20-S0-5.pdf).

[33] Michael Gordon, "In NC federal court, jittery attorneys want to know: Should we even be here?" *Charlotte Observer* (Apr. 17, 2020) (available at https://www.charlotteobserver.com/news/local/article241942816.html? fbclid=IwAR3-IGC3u6fmlyqMuVi34AOdlunVaJ_LVvi1sBbexXV-Jv_yjtgOpkZ0LG8).

[34] *See* National Center for State Courts, "Coronavirus: News updates, court administrative orders, and more resources: In-Person Proceedings Generally Suspended" (accessed Apr. 25, 2020) (available at https://www.ncsc.org/).

19. Other judges have suffered the consequences of such decisions. In one widely reported case, a trial court judge in New York State insisted on conducting court business as usual, and when one lawyer complained about the lack of health precautions, retorted: "If you don't like it, you can leave." Two weeks later, the judge was dead of complications from a COVID-19 infection, and several of his colleagues were also infected.[35]

### *The CARES Act*

20. Passed with unprecedented speed by an essentially unanimous Congress, signed into law by the President, and activated by a emergency meeting of the Judicial Conference – all within four days – the CARES Act[36] allows for sentencing hearings, *inter alia,* to be conducted during the current COVID-19 emergency by video conference, or by teleconference if video conferencing is unavailable, if the judge "finds for specific reasons that the…sentencing in that case cannot be further delayed without serious harm to the interests of justice,"[37] and if the defendant consents.[38] Every District Court standing order cited above – from throughout the adjacent districts and other districts of the Fourth Circuit – includes a provision citing and implementing this provision.

21. The statute, therefore, expresses a clear and unambiguous presumption that sentencing hearings that can be "delayed without serious harm to the interests of justice" will be so delayed, and that those that cannot will be conducted by video conference, or by teleconference if a video conference is not possible, unless the defendant insists on an in-

---

[35] Noah Goldberg, "A Brooklyn courthouse was still packed as coronavirus spread. Judges, their staffs and lawyers are paying the price," *N.Y. Daily News* (Apr. 8, 2020) (available at https://www.nydailynews.com/coronavirus/ny-coronavirus-brooklyn-supreme-court-civil-covid-19-judges-attorneys-20200409-byebigdbpbcv3he7wf5hxombju-story.html).
[36] P.L. 116-136, 134 Stat. 281 (Mar. 27, 2020).
[37] *Id.,* § 15002(b)(2)(A).
[38] *Id.,* § 15002(b)(4).

person appearance. "One of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States,* 556 U.S. 303, 314 (2009) (citations and quotation marks omitted). To hold that a judge is free to insist on unnecessary in-person appearances for cases that ***can*** be delayed, while Congress has put extraordinary procedures in place to obviate the need for such appearances for hearings that ***cannot*** be delayed, would be to write § 15002(b) of the CARES Act out of existence.

### *The jail and prison environment*

22. Jails and prisons are uniquely vulnerable to an outbreak of this disease. The "risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected."[39] As Dr. Homer Venters, the former Chief Medical Officer for New York City's Correctional Health Services, explained, prisons and jails "promote the spread of communicable diseases… They are environments that keep people close in close quarters and make it very possible for germs to spread from one person to another, so outbreaks are…very difficult to control."[40] Indeed, during the H1N1-strain flu outbreak in 2009 (known as "swine flu"), jails and prisons experienced a disproportionately high number of cases.[41] Dr. Venters noted that if the virus is in the community, it will get into the jails and prisons, "[a]nd when it gets there, it will spread around like wildfire".[42]

---

[39] *Velesaca v. Wolf*, 1:20 CV 1803, doc. no. 42 (Declaration of Dr. Jaimie Meyer) at ¶¶ 1-3, 7 (filed Mar. 16, 2020).
[40] NPR, "Coronavirus: The Prison Population," at 15:36-16:00, 16:29-16:56 (Mar. 16, 2020) (available at https://www.npr.org/2020/03/16/816492293/coronavirus-the-prison-population).
[41] Declaration of Dr. Jaimie Meyer, *supra* n. 42 at ¶ 19.
[42] NPR, *supra.* n. 22 at 20:27-20:34.

23. Those dire predictions have proven true. Even though New York City has one of the world's highest rates of infection, the rate of infection at Rikers' Island, the city's central jail complex, is over five times that of the surrounding city.[43] The rate of infection in Illinois' Cook County Jail is thirty times the rate of the surrounding City of Chicago,[44] prompting a federal District Judge to grant a temporary restraining order requiring increased testing, prohibiting the use of certain cells for new detainees, requiring the testing of all inmates showing symptoms of the virus and anyone in contact with those inmates, the provision of adequate soap or hand sanitizer, and other measures.[45]

### *The Bureau of Prisons*

24. Two judges of this District have expressed the opinion that during the current emergency incarcerated defendants are safer in custody of the Bureau of Prisons than in a local jail. Nothing could be further from the truth.

25. A month ago, CBS News reported that at some Bureau of Prisons facilities employees lacked basic protective gear and hygiene supplies; that new inmates were arriving with fevers; that staff had been calling in sick to avoid exposure; that the special housing units in which sick inmates would presumably be quarantined were already at or near capacity; and that procedures had not changed in response to the threat of COVID-19.[46]

---

[43] *See* "COVID-19 Infection Tracking in NYC Jails: Coronavirus Infection Rates As Of April 24, 2020," *The Legal Aid Society* (accessed Apr. 25, 2020) (available at https://www.legalaidnyc.org/covid-19-infection-tracking-in-nyc-jails/).
[44] *Mays v. Dart*, 1:20 CV 2134, Memorandum & Order, doc. no. 47 at 20 (N.D. Ill. Apr. 9, 2020)
[45] *See id.*
[46] *See* Cassidy McDonald, "Federal Prison workers say conflicting orders on coronavirus response is putting lives at risk," CBS News (Mar. 19, 2020) (available at https://www.cbsnews.com/ news/coronavirus-prison-federal-employees-say-conflicting-orders-putting-lives-at-risk-2020-03-19/).

26. On March 31, 2020, the Bureau of Prisons ("BOP") implemented Phase V of its response plan to the COVID-19 pandemic. As part of this response, BOP is now "coordinating with the United States Marshals Service (USMS) to significantly decrease incoming movement during this time."[47] Moreover, Attorney General William Barr has issued unprecedented orders to review "all at-risk inmates" at affected institutions and to move appropriate inmates quickly to home confinement, even if electronic monitoring is unavailable.[48]

27. The Bureau of Prisons has gone so far as to ask judges to delay the reporting dates for sentenced prisoners on bond to begin their sentences.[49]

28. The office of the undersigned was informed by the United States Marshals Service on April 10, 2020, that the BOP would not be accepting any transfers from the local jails for the next two weeks. It is unknown whether that two-week freeze, which would have ended this past Friday, has in fact been lifted.

29. Nevertheless, the results of the BOP's delayed response to the crisis are now apparent, and tragic. The BOP reports on its website that over 1,100 BOP inmates and staff have tested positive for COVID-19, and 27 inmates have died.[50] Five of the inmate deaths have been at the federal correctional complex at Butner, North Carolina, where 90 people have tested positive.[51] However, as of just a few weeks ago, the BOP was reporting lower

---

[47] Federal Bureau of Prisons, "COVID-19 Action Plan: Phase Five," effective April 1, 2020 (available at https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp).
[48] Attorney General William Barr, "Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" (Apr. 3, 2020) (available at https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000).
[49] *See, e.g., United States v. Williams-Singleton,* 3:19 CR 127, doc. nos. 54 at 1, 54-1 at 1-2 (W.D.N.C. March 25, 2020) (government's motion to extend reporting time, at BOP request, for 90 days).
[50] Federal Bureau of Prisons, "COVID-19 Coronavirus" (accessed on Apr. 26, 2020) (available at https://www.bop.gov/coronavirus/).
[51] *Id.*

numbers on its website than it was reporting to local health officials,[52] so the true totals may be higher. In fact, the BOP is not reporting COVID-19 cases at the private prisons it contracts with, which includes an inmate and three staff members who have tested positive at a North Carolina facility.[53]

30. Moreover, the rate of increase of COVID-19 cases, measured from the date of the first reported case, has been dramatically higher in the BOP than in the nation as a whole. The first reported case in the United States was on was January 22, 2020; a month later there were 15 cases.[54] The BOP reported its first two cases on March 20; a month later there were 804 cases,[55] for a rate of increase over 20 times faster than the national rate. As a result, the proportion of BOP inmates now testing positive for the virus – more than one out of every 200 inmates – is double the national average and climbing.[56]

31. At the federal prison in Elkton, Ohio – one of the "affected institutions" named in the Attorney General's memorandum – the governor of Ohio called in National Guard medical personnel to help with the treatment of inmates after three inmates died from the disease.[57] Just a few days ago, a federal judge granted a temporary injunction in a class action suit on behalf of prisoners housed at Elkton, ordering the BOP to identify

---

[52] *See* Dan Kane & Ashad Hajela, "Coronavirus cases surge at Butner prison complex in NC, county official reports," *Charlotte Observer* (Apr. 6, 2020) (available at https://www.charlotteobserver.com/news/coronavirus/article241801076.html?utm_source=pushly&intcid=pushly_504490).
[53] Dan Kane, "A second federal prison in NC has coronavirus cases, and U.S. officials aren't tracking it," *The News & Observer* (Apr. 19, 2020) (available at https://www.newsobserver.com/news/local/article 242125516.html).
[54] Federal Defenders of New York, Southern & Eastern Districts, "Number of Reported COVID-19 Cases in Bureau of Prisons and the United States, Compared by Days since First Reported Infection" (accessed Apr. 26, 2020) (available at https://federaldefendersny.org/).
[55] *Id.*
[56] Federal Defenders of New York, Southern & Eastern Districts, "Rate of COVID-19 Infections By Population" (accessed Apr. 26, 2020) (available at https://federaldefendersny.org/).
[57] "Ohio National Guard being sent to help sick inmates at Elkton prison," *WKBN* (Apr. 6, 2020) (available at https://www.wkbn.com/news/coronavirus/ohio-national-guard-being-sent-to-help-sick-inmates-at-elkton-prison/).

medically vulnerable inmates under cetain criteria, and "to evaluate each [medically vulnerable inmate's] eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two (2) weeks."[58]

32. The number of deaths and total cases at Butner is now approaching those at Elkton, where there have now been six deaths and 99 confirmed cases.[59]

### *Unique dangers in Mr. Mitchell's case*

33. In response to the COVID-19 crisis, the Statesville courthouse has been closed, meaning that the venue of Mr. Mitchell's sentencing has been changed to the Charlotte courthouse. That change represents a dramatically increased risk of the spread of the virus for him, his family, and the other inmates housed in the Catawba County Detention Center, owing to his transportation to and from Charlotte, and his family's potential travel thereto.

34. North Carolina is experiencing rapid contagion, with the state's number of cases ballooning from the March 10 count of seven cases to over 8,800 cases today and nearly 300 dead. Mecklenburg County is the hardest-hit in the state, with 41 people dead and nearly 1,500 confirmed cases of the virus.[60]

35. By contrast, Iredell County, the home of the Statesville Division, where Mr. Mitchell was supposed to be sentenced, has 97 cases and three deaths. Catawba County,

---

[58] *Wilson v. Williams*, __ F. Supp. 3d __, 2020 WL 1940882, *10 (N.D. Ohio Apr. 22, 2020).
[59] Federal Bureau of Prisons, "COVID-19 Coronavirus" (accessed on Apr. 25, 2020) (available at https://www.bop.gov/coronavirus/).
[60] Mitchell Willetts & Bailey Aldridge, "Coronavirus live updates: Here's what to know in North Carolina on April 26," *Charlotte Observer* (Apr. 26, 2020) (available at https://www.charlotteobserver.com/news/coronavirus/article242297136.html).

where Mr. Mitchell is currently housed, has 49 cases and a single death, and Wilkes County, where his family lives, has 21 cases and a single death.[61]

36. The first reported cases at the Mecklenburg jail surfaced three weeks ago, when two officers tested positive, one at each Meckelnburg facility.[62] This past week, numerous inmates housed at the Mecklenburg County Sheriff's Department's central jail complained to their family members and lawyers, including the undersigned, that the jail had stopped serving hot meals, and was instead providing bagged cold food three meals a day. The inference being drawn was that the kitchen had been shut down, likely due to COVID-19. No other explanation has been forthcoming.

37. The Gaston County Jail is another facility at which the U.S. Marshals Service holds pretrial, presentencing, and sentenced inmates in Charlotte and Statesville Division cases. As such, Gaston inmates are regularly transported to and from the Charlotte courthouse. It was reported on April 7, 2020 that two Gaston County Jail employees had tested positive for COVID-19; the latest reports are that a female inmate is ill with the virus, ten inmates and eight staff members are in isolation, and 47 inmates have been placed in 14-day isolation.[63]

38. As of this writing, there are no reported cases of COVID-19 infection at the Catawba County Detention Center, where Mr. Mitchell is housed.

---

[61] North Carolina Dep't of Health & Human Services, "COVID-19 North Carolina Dashboard" (accessed Apr. 26, 2020) (available at https://www.ncdhhs.gov/divisions/public-health/covid19/covid-19-nc-case-count#by-counties).

[62] Michael Gordon, "Some at Mecklenburg jail may be quarantined after officer tests positive for COVID-19," *Charlotte Observer* (Apr. 6, 2020) (available at https://www.charlotteobserver.com/news/coronavirus/article241811261.html).

[63] "Inmate at Gaston Co. Jail tests positive for COVID-19, 16 people including staff now in isolation," *WBTV* (Apr. 24, 2020) (available at https://www.wbtv.com/2020/04/24/inmate-gaston-co-jail-tests-positive-covid-people-including-staff-now-isolation/).

39. Mr. Mitchell is to be transported to the Charlotte courthouse in a single vehicle with other inmates, and will then be placed for hours in a holding cell with inmates from other jails. That cell will have held inmates from all of the jails used by the District Marshals within the prior several days, and will not have been disinfected. The lone courtroom being used in the Charlotte Division is being cleaned between hearings to prevent the spread of COVID-19, as documented by the Charlotte Observer;[64] however, the video accompanying that article shows court staff not wearing masks or any other protective gear, and disregarding social distancing requirements.[65] Moreover, despite repeated assurances, the Marshals office in which attorneys visit with clients is not being cleaned, on either the attorney side or the inmate side. All of these places present opportunities for the virus to spread between court staff, attorneys, Marshals, inmates, and their associated jail facilities. Every such contact increases the chance of a new localized outbreak of COVID-19.

### *Risk to the public & Mr. Mitchell's family*

40. "[O]ne of the most important means of assuring a fair trial is that the process be open to neutral observers."[66] Both the defendant's Sixth Amendment right to a public trial and the public's First Amendment right to access courtrooms is implicated by limitations on courtroom access.[67] "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible

---

[64] *See* Michael Gordon, "A one-woman cleaning army: How a Charlotte court goes on through the pandemic," *Charlotte Observer* (Apr. 13, 2020) (available at https://www.charlotteobserver.com/news/local/crime/article241854686.html).
[65] *Id.*
[66] *Press-Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 7 (1986).
[67] *Id.* ("The right to an open public trial is a shared right of the accused and the public[;]" the former protected under the Sixth Amendment and the latter under the First Amendment).

abuse of judicial power."[68] "[T]he presence of interested spectators may keep [the defendant's] triers keenly alive to a sense of their responsibility and to the importance of their functions[,]" as well as "encourag[ing] witnesses to come forward and discourag[ing] perjury."[69] And "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known."[70]

41. Because "[t]he presence of the public operates to check any temptation that might be felt by either the prosecutor or the court...to seek or impose an arbitrary or disproportionate sentence[,]" the right attaches at a sentencing hearing.[71] "The presence of the public at sentencing reminds the participants, especially the judge that the consequences of their actions extend to the broader community."[72]

42. Here, a number of government actions have constrained the public's ability to attend the defendant's sentencing. This includes the court's order prohibiting certain members of the public from entering the courthouse,[73] as well as limiting the number of persons who can enter the courtroom for any particular hearing.

43. A more significant restraint, however, emanates from orders by Mecklenburg County and the State of North Carolina that prohibit residents from leaving

---

[68] *Id.* at 13.
[69] *Presley v. Georgia*, 558 U.S. 209, 213 (2010) (citation and internal quotations omitted).
[70] *In re Oliver*, 333 U.S. 257, 270 (1948) (emphasis in original).
[71] *In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986) (finding that the First Amendment right of access extends to plea and sentencing hearings).
[72] *United States v. Rivera*, 682 F.3d 1223, 1230 (9th Cir. 2012) (holding that court's exclusion of defendant's family members from sentencing hearing violated public trial guarantee).
[73] *See In re: Restrictions on Visitors to Courthouses,* 3:20 MC 48 (W.D.N.C. Mar. 17, 2020) (prohibiting individuals who have traveled to the 8 listed countries in the last 14 days or have been in close contact with someone who has so traveled; persons who have been asked to self-quarantine by any doctor, hospital, or health agency; and persons who have been diagnosed with COVID-19 or have been in close contact with someone so diagnosed) (available at https://www.ncwd.uscourts.gov/sites/default/files/NCWD_show_doc%5B1%5D.pdf).

their home unless engaging in an enumerated essential activity.[74] Attending a court hearing is not listed as an essential activity, which includes things like receiving medical treatment, necessary supplies from an essential business, or getting outdoor exercise.[75] Indeed, North Carolina law enforcement has already arrested someone for engaging in a First Amendment activity (protesting), because it was not a permissible essential activity listed in the statewide executive order.[76]

44. Most importantly, Mr. Mitchell's mother is disabled and requires his sister to accompany her to court. Even if, as a practical matter, Mr. Mitchell's relatives were unlikely to face arrest for attending court, the timing and change of venue would force them to choose between their own health and well-being and attending Mr. Mitchell's sentencing hearing. As noted above, both their county of residence and the county in which the sentencing was originally set to be held have been impacted by COVID-19 far less than Charlotte, the most dangerous place for infection in North Carolina.

45. The government has argued in a case in a different district that holding a sentencing hearing during the COVID-19 emergency such that the victim feels unsafe attending court violates the victim's statutory right to be heard at sentencing under

---

[74] *See* Mecklenburg County Stay at Home Order (available at https://www.mecknc.gov/news/Documents/Mecklenburg%20County%20Stay%20at%20Home%20Orders.pdf); State of North Carolina, Executive Order No. 121 (available at https://files.nc.gov/governor/ documents/files/EO121-Stay-at-Home-Order-3.pdf). The Mecklenburg County order has been extended until April 29, 2020. *See Mecklenburg County, Stay at Home Order Extended to April 29* (available at https://www.mecknc.gov/news/Pages/Amended-Stay-at-Home-Order.aspx).
[75] *Id.*
[76] *See* Travis Fain, *Raleigh PD call protesting "non-essential activity"* WRAL (Apr. 15, 2020), available at <https://www.wral.com/coronavirus/raleigh-pd-calls-protesting-non-essential-activity/19057352/>.

18 U.S.C. § 3771(a)(4).[77] Mr. Mitchell's constitutional right, and his family's constitutional right, for them to be present is certainly no less important.

### *Lack of harm to the interests of justice*

46. Mr. Mitchell is to be sentenced to a mandatory minimum term of imprisonment of at least ten years.[78] That will not change whether he is sentenced a month from now or three months from now.

47. For clients of the undersigned who pled guilty in this District in 2018, the average wait from the date of the plea to the sentencing was 209 days. Mr. Mitchell pled guilty on December 3, 2019; his upcoming sentencing date would be 149 days after, or nearly two months faster than average. A delay of 60 days would still see him sentenced having waited no longer than average even before the COVID-19 emergency.

48. As noted above, the Bureau of Prisons is not accepting prisoners from the county jails of this District at present, so Mr. Mitchell will not be transported to his ultimate place of designation any time soon, and a delay in sentencing will therefore cause no change to the location and conditions under which he ultimately serves his sentence.

49. In short, there would be no identifiable impact on the interests of justice occasioned by a continuance, much less "serious harm to the interests of justice" under the terms of § 15002(b)(2) of the CARES Act, 50 U.S.C. § 1601 et seq., and this Court's Standing Order dated March 30, 2020.

---

[77] *See United States v. Torres-Acevedo,* 1:19 CR 74, doc. no. 48 (Government's Motion to Adjourn Sentencing Date) at 5 (W.D.N.Y Apr. 9, 2020) (attached hereto).
[78] The statutory exceptions allowing a sentence below the mandatory minimum, *see* 18 U.S.C. § 3553(e & f), do not apply in this case.

## *Conclusion*

50. Holding Mr. Mitchell's sentencing hearing in person at this time would force a change of venue to a more dangerous area, impacting on the public's and Mr. Mitchell's friends' and family's right to attend; risk further spread of the virus and the health and safety of Mr. Mitchell, the court staff, Marshals, other inmates, counsel, and the public at large; violate the letter and spirit of the CARES Act, a law passed with unprecedented speed and bipartisan unity to address the COVID-19 crisis; and run contrary to the sensible responses and practices of every other judge in the Charlotte Division, the surrounding federal districts, the other districts of the Fourth Circuit, and the courts of the State of North Carolina and the vast majority of other states and federal territories.

51. Mr. Mitchell will be sentenced to at least 10 years in prison, and even a continuance of 60 days would result in no more than average total delay between his plea and sentencing dates, and would be unlikely to affect the eventual timing of his transport to the Bureau of Prisons.

52. There are no reasonable, articulable contrary concerns weighing in favor of holding the hearing in person at this time, much less the sort of weighty concerns that might overcome all of the stated reasons for a continuance.

53. The United States does not oppose this motion.

**WHEREFORE,** Freddie Mitchell requests a continuance of his sentencing hearing.

Respectfully submitted:

 s/ Peter Adolf
Peter Adolf
Trial Team Leader
Assistant Federal Public Defender
North Carolina Bar No. 37157
Attorney for Freddie Mitchell
Federal Public Defender, Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720 (phone)
(704) 374-0722 (fax)
Peter_Adolf@fd.org

DATE: April 27, 2020